## THE PEOPLE *vs.* SHORTER.

Where, upon the trial of an indictment for murder, the prisoner attempts to justify the homicide on the ground that it was committed in self defence, he must show, to the satisfaction of the jury, that he was in imminent danger either of death or of some great bodily harm. It is not sufficient that the accused *believed* that it was necessary to take the life of his assailant, in order to protect himself from some great personal injury. MULLETT, J. *dissenting.*

A homicide is not justifiable as having been done in self defence, unless there was, first, a reasonable ground to apprehend a design, on the part of the person killed, to commit a felony, or to do some great personal injury; and secondly, there was imminent danger of such apprehended design being accomplished. That is, it must appear that there was imminent danger that a felony would in fact be committed, or that some great personal injury would be inflicted, unless the assailant was arrested by death. MULLETT, J. *dissenting.*

Where a party, on his trial upon an indictment for murder, makes no proof of a necessity to take the life of the person killed, or of an attempt to decline or discontinue the combat, or of an inability to do so, he has no right to ask the court to charge the jury that although the prisoner was mistaken in believing there was reasonable ground to apprehend a design on the part of the deceased

to do him some great personal injury, and that there was imminent danger of such design being accomplished, yet that he was justified in killing the deceased if he believed himself to be in such danger. *Per* MULLETT, J.

The prisoner, in such a case, has no right to ask the opinion of the judge upon a mere hypothetical proposition.

MOTION for a new trial. The defendant was indicted for the murder of Stephen C. Brush, and pleaded not guilty. He was tried at the Erie oyer and terminer, in October, 1848, before Justice Hoyt. Upon the trial it was proved that on the night of the 19th day of September, 1848, at about the hour of eleven o'clock, the said Stephen C. Brush was passing down Seneca-street, in the city of Buffalo, in company with some boys from fifteen to seventeen years of age, and that they were conversing and laughing about a negro character that had that evening been acted at the theatre; that while they were so conversing they were walking pretty fast, and passed the prisoner, who was a negro, and another negro, on the sidewalk. That after passing them, the prisoner and the other negro walked at a short distance behind Brush and the boys, a few rods, and then came up with them, and the prisoner passed between Brush and the boys, and just as he passed them a fight occurred between Brush and the prisoner on the sidewalk; that Brush was full as heavy and athletic a man as the prisoner. One of the witnesses, in company with Brush, thought he had the best of the fight at first; that none of the other persons interfered with the fight; that after several blows had passed Brush hallooed "he has got a knife;" that Brush retreated to the middle of the road : some of the witnesses testified that he turned and ran, and that the prisoner ran after him; and others that he backed up towards the middle of the road, and that the prisoner followed him up, and that blows were passing between them, or that the prisoner was striking Brush and Brush defending off the blows until he got to the centre of the road, and he then hallooed "oh boys," and in a moment fell down and died in about fifteen minutes; that when he fell the prisoner, and the other negro, and most of the boys ran.

There was some evidence tending to show that the prisoner

did not leave the sidewalk. There were several severe incised wounds inflicted upon Brush with a sharp instrument, one between the ribs which entered the cavity of the heart, which was mortal; another which entered the lungs, which was most likely to be mortal, one wound in the abdomen, one upon the head, one upon the arm, severing it about one-third off, one over the eye, and from three to five in the back of the neck. The evidence showed that when Brush and the boys passed the prisoner and the other negro some words passed between them; the testimony was somewhat conflicting as to the precise expressions used, and who used them, but there was evidence tending to show that the prisoner, as Brush passed, said, "what about negroes?" and that when he came up behind Brush the prisoner or the other negro said they are nothing but boys, and that Brush said "I know it." The boys in company with Brush testified that the prisoner struck Brush first; but it was quite dark and there was some conflict in the testimony as to the position of the parties when the first blow was struck, and as to whether prisoner passed Brush on the outside of the sidewalk or on the inside of it; and whether the first blow was struck by the one who was nearest the outside or inside of the walk. And Sharp, the negro who was with the prisoner, testified that Brush struck the prisoner first. Sharp testified that the prisoner had a knife in his hands whittling a stick as they were going down Seneca-street, before they heard Brush and the other boys coming; that he thought the prisoner threw away the stick a short time previous to the time Brush overtook them, but still had the knife open in his hand, and that he had the knife open in his hand when he overtook and passed Brush and when the fight commenced, and that he struck with the hand in which he held the knife, but he could not tell whether he struck with the knife or not. The prisoner was arrested about an hour after the affray, at the Exchange Hotel, in the city of Buffalo; and it was proven that a large dirk knife with a dirk blade and a spring back was found with him, the blade of which was covered with blood, and that the prisoner had considerable blood upon his clothes. Evidence was also given

of the prisoner's confessions when arrested; some parts of which tended to show that he admitted he had killed Brush with the knife, and that he had done so because Brush had insulted him, and that he would kill any white man who should insult him.  There was other proof on the part of the prisoner which tended to show that when those admissions were alleged to have been made, he stated that Brush pitched upon him and struck him first, and there were four or five of Brush's party, and the prisoner did not know what they would fight with, and he had the knife in his hand and fought in his own defence.  There was no evidence of any previous difficulty or acquaintance between the prisoner and Brush.

After the proof in the cause had closed, his honor, Justice Hoyt, charged the jury that the third and fourth counts in the indictment were insufficient in law, and that no conviction could be had under either of them; that the prisoner, if convicted at all, must be convicted under the first and second counts of the indictment.  That if the jury should be satisfied, from the evidence, that the prisoner killed Brush with a premeditated design to effect his death, or with malice aforethought, it was murder.  That malice was either express or implied.  Express malice was when one with deliberate mind and formed design killed another; and was usually evinced by previous threats, lying in wait, former enmity, or concerted schemes to do the person killed some bodily harm.  That malice was presumed in every homicide, and it was not necessary for the prosecution to prove any previous malice, in the first instance.  But in such case the malice was only presumed, and the prisoner might rebut that presumption by showing such circumstances as would make the killing justifiable, or excusable, or manslaughter, or that it might be evinced either by the evidence produced on the part of the people in proving the circumstances attending the killing, or by proof introduced on the part of the prisoner; that should the jury be satisfied, from the evidence in the cause, that when the affray commenced, the prisoner had no design to kill Brush, and that he had no previous design to do so, and that while they were

in such affray the prisoner killed Brush in the heat of passion, during the fight, without reflection or proper time for the blood or passion to subside, or reason to interpose, it would not be murder, but it would be either justifiable or excusable homicide or manslaughter.    That if the jury should find that there had been no malice on the part of the prisoner previous to the affray, and should find that after the affray commenced sufficient time intervened between its commencement (under all the circumstances of the case,) and the time the mortal wound was given, for the prisoner's blood to cool, and passion to subside and reason to interpose, and he then formed the design to kill the deceased, though such design was formed but a moment before the fatal blow was given, it would be murder, and it would be the duty of the jury to find the prisoner guilty. That the jury would have a right to take into consideration the nature of the injury inflicted, the number of blows given, and the weapon used, as circumstances tending to show a formed malicious deliberate design to kill; and on the other hand they would have a right to take into consideration the provocation, if any there was, the circumstances and manner of the fight, and the short length of time which ensued, and whether it was continually going on, so that there was not time for reflection, as circumstances tending to mitigate the offence.    If the jury should not find the prisoner guilty of murder they would next inquire, whether the killing was manslaughter, or excusable or justifiable homicide.    And if they should find that Brush first assaulted the prisoner and committed the first battery upon him, and that the prisoner killed Brush in the lawful defence of himself, and that there was reasonable ground for him to apprehend a design on the part of Brush to commit a felony upon him, or to do him some great personal injury, and that there was imminent danger of such design being accomplished, the killing would be justifiable homicide. But they should be satisfied from the evidence, and all the circumstances of the transaction, that he really entertained such reasonable apprehension, and that there was great danger in fact of such offence or injury being committed upon the pris-

oner; otherwise it would not be justifiable. And if they found that the killing was neither murder nor justifiable homicide, they would then inquire and examine the case to see of which degree of manslaughter the prisoner was guilty, and explained to them what would constitute manslaughter in the different degrees.

The counsel for the prisoner then requested the justice to charge the jury that if Brush struck the prisoner the first blow and the prisoner had no premeditated design to effect the death of Brush. and gave him more blows, and used more force, than was really necessary to his own defence, although he might have been mistaken in believing that there was reasonable ground to apprehend a design to do the prisoner some great personal injury, and that there was imminent danger of such design being accomplished, if he did not adopt that occasion to gratify his feelings of malice or revenge, although he used a dangerous weapon, the prisoner would be justifiable in killing Brush if he believed himself in such danger; that the question was not if there was danger, but whether the prisoner believed there was. But the justice refused so to charge the jury, and on the contrary charged the jury that to render such killing justifiable they should be satisfied that there was in fact imminent danger that Brush would commit some great personal injury to the prisoner. To which decision and refusal so to charge as requested by the prisoner's counsel, and to the charge so last given, the prisoner by his counsel excepted.

The jury found the prisoner guilty of the crime charged in the two first counts of the indictment. And the prisoner's counsel having filed a bill of exceptions, the district attorney removed the cause into this court by a writ of certiorari.

*Eli Cook,* for the prisoner.

*B. H. Austin,* (district attorney,) for the people.

Marvin, J.  The prisoner was tried upon an indictment for the murder of Stephen C. Brush, and convicted. His counsel took an exception to the refusal of the judge to charge as re-

The People *v.* Shorter.

quested—and also to a part of the charge as made. The case is brought before us by certiorari.

The judge charged the jury fully upon the law of murder; and to this part of the charge there is no objection. He then instructed the jury that if they should not find the prisoner guilty of murder they would next inquire whether the killing was manslaughter, or excusable, or justifiable homicide; and if they should find that Brush first assaulted the prisoner and committed the first battery upon him, and that the prisoner killed Brush in the lawful defence of himself, and that there was reasonable ground for him to apprehend a design, on the part of Brush, to commit a felony upon him, or to do him some great personal injury, *and that there was imminent danger of such design being accomplished, the killing would be justifiable homicide;* but they should be satisfied from the evidence, and all the circumstances of the transaction, that he really entertained such reasonable apprehension, *and that there was great danger in fact of such offence or injury being committed upon the prisoner; otherwise it would not be justifiable.*

The judge then instructed the jury upon the law of manslaughter, and its different degrees. After he had concluded his charge, the counsel for the prisoner requested him to charge the jury: "that if Brush struck the prisoner the first blow, and the prisoner had no premeditated design to effect the death of Brush, and gave him more blows, and used more force than was really necessary to his own defence, although he may have been mistaken in believing that there was a reasonable ground to apprehend a design to do the prisoner some great personal injury, and that there was imminent danger of such design being accomplished, if he did not adopt that occasion to gratify his feelings of malice or revenge, although he used a dangerous weapon, the prisoner would be justifiable in killing Brush if he believed himself in such danger. That the question was not if there was danger, but whether the prisoner believed there was." The judge refused so to instruct the jury; but he instructed them "that to render such killing justifiable, they should be satisfied that there was in fact imminent danger that

Brush would commit some great personal injury to the prisoner." To this refusal to charge as requested, and to the charge so last given, the prisoner's counsel excepted.

It will not be necessary to criticise the language of the proposition made by the prisoner's counsel, as the charge of the judge was clear and distinct upon the question, and that was excepted to. If this instruction be erroneous the prisoner should have a new trial. The question is, can the homicide be *justified* unless there was in fact imminent danger that Brush would commit some great personal injury to the prisoner? or was the prisoner justified in killing him, if there was reasonable ground to apprehend a design on the part of Brush to do him some great personal injury, and he *believed* there was in fact imminent danger that such injury would be inflicted?

Before proceeding to consider this question it will be well to advert to the provisions of the revised statute in relation to justifiable homicide. The statute specifies the cases of justifiable homicide. (2 *R. S.* 660, § 3.) By the 2d subdivision of that section, the homicide is justifiable "when committed in the lawful defence of such person, or of his or her husband, wife, parent, child, master, mistress, or servant, *when there shall be reasonable ground to apprehend a design* to commit a felony, or to do some great personal injury, *and there shall be imminent danger of such design being accomplished.*"

The charge is very nearly in the language of this section. It is argued however, that if the prisoner did apprehend a design on the part of Brush to do him some great personal injury, and *believed* he was in great danger, he had then a right to act upon that belief, and take the life of Brush, although there was no actual imminent danger. In other words, if he believed in the danger he had a right to act as though the danger was actually present, and the injury about to be inflicted upon him; and that the consequence of this *mistaken belief* must fall upon the deceased, and the prisoner must in the eye of the law, stand entirely justified.

Several particulars are to be noticed in this section, as applicable to the present case. The homicide, if justifiable, must

have been committed in the lawful defence of the person of the prisoner, at a time when there was *reasonable ground to apprehend a design* to do him some great personal injury. Who is to judge of the reasonable ground to apprehend a design to do injury? The grounds must be made to appear on the trial, and the jury must be satisfied that they were reasonable grounds upon which to found an apprehension of a design to commit the felony, or do some great personal injury. It is true the party assailed must, at the time, judge of the ground for his apprehension, but he judges and decides at his peril, so far as the question of entire justification is concerned. It will not do to hold that he who has taken the life of another is entirely justifiable when he acts upon unreasonable grounds of apprehension, though he may have acted upon an honest apprehension of a design, on the part of the person killed, to commit a felony, or to do him some great bodily injury. In such a case, the crime might be only manslaughter, and that too of the lowest degree. But to justify the act of killing, in such a case, would be to establish a rule for the security of human life, resting upon the uncertain apprehension of men who may act upon unreasonable and improbable grounds.

The statute also adds this farther condition: " And there shall be imminent danger of such design being accomplished." The language is here changed. The question no longer depends upon reasonable grounds to apprehend imminent danger, from which a belief may be formed. It is, to my mind, clear and explicit, and requires that there should be imminent danger of the commission of a felony, or of some great personal injury.

The man assaulted may have reasonable ground to apprehend a *design* on the part of his assailant to do him some great personal injury, and yet there may in fact be little or no danger of the accomplishment of the design. Suppose the party committing the assault is unarmed, and weak, and infirm as compared with the party assaulted, and this disparity of strength is such that the party assaulted is able to protect his person from injury. The imminent danger of accomplishing the design would not exist, and yet the design may have been

fully formed, and manifested in a way so as to leave no doubt of it. In such a case the killing of the assailant could not be justified.

Suppose a case where there were appearances of imminent danger, and the party believing himself in imminent danger, kills, would he be justifiable if the danger did not exist? If so, the issue on the trial would be, first as to the appearances of danger, and secondly, whether the party killing acted upon an honest belief of imminent danger ; not was there in fact imminent danger. The statute has established the rules by which to test the justification, and they are, as I understand, in accordance with the common law. What is meant in the statute by "such design?" Does this language imply that a design to commit a felony, or to do some great personal injury, had been actually formed? If so, then a reasonable ground to apprehend a design, &c. as declared in a previous part of the section, is not sufficient, but there must be added to it not only the imminent danger but the actual design. This is not the true construction of the language. If there is a reasonable ground to apprehend the design, and there is imminent danger that such apprehended design will be accomplished, it is sufficient. The party assailed may have reasonable ground to apprehend *a design* on the part of the assailant to kill him, and he may be in imminent danger, from the acts of the assailant, of being killed, and yet his assailant may not have formed the design to kill or to do him great personal injury. His acts may however be such as actually to put the life of the person assailed in imminent danger. In such a case the killing would be justifiable.

This construction of the statute is, in my mind, confirmed by a reference to the common law upon the question now under consideration. A full discussion of the question would lead to an examination of the law of homicide generally ; but it will only be necessary now to state the distinction between murder, manslaughter, and excusable and justifiable homicide. Murder is the killing of any person with malice prepense or aforethought. The grand criterion by which murder is dis-

The People *v.* Shorter.

tinguishable from other species of homicide, is the malice pre-pense or aforethought. Without this malice, express or implied, there can be no murder. Every homicide is however presumed to be malicious, and of course amounting to murder, until the contrary appears from circumstances of alleviation, excuse or justification; and it is incumbent upon the prisoner to make out such circumstances to the satisfaction of the jury, unless they appear from the evidence against him. Express malice is when one person kills another with a sedate, deliberate mind and formed design, such formed design being evidenced by external circumstances discovering the inward intention; as by lying in wait, antecedent menaces, former grudges, and concerted schemes to do the party some bodily harm. (*Russ. on Crimes, tit. Murder.*) At common law, malice is implied in a variety of cases. In one of those classes of cases the crime in this state is reduced to manslaughter. (*See* 2 *R. S.* 661, § 5.)

In manslaughter malice is wanting. In excusable homicide, the person by whom it is committed is not altogether free from blame. Russell divides this into homicide by misadventure and in self defence. The latter, he says, is when one kills another in defence of himself or property upon some sudden affray, considered by the law as in some measure blamable and barely excusable. When a man is assaulted in the course of a sudden brawl or quarrel, he may, in some cases, protect himself by killing the person who assaulted him, and excuse himself on the ground of self defence. But to entitle himself to this plea, he must make it appear, first, that before a mortal stroke was given he had declined any farther combat: Secondly, that he then killed his adversary through mere necessity, in order to avoid immediate death. Under such circumstances, it will be excusable self defence. Mr. Russell says this species of homicide borders very nearly upon manslaughter; that the boundaries between them are in some instances scarcely perceivable. The true criterion between them is stated to be this: when both parties are actually combatting at the time the mortal stroke is given, the slayer is guilty of manslaughter; but if the

slayer has not begun to fight, or having begun, endeavors to decline any farther struggle, and afterwards being closely pressed by his antagonist, kills him to avoid his own destruction ; this is homicide, excusable by self defence. Numerous cases are given in illustration of these rules. There must be no premeditation, no malice on the part of the party killing. He must retreat as far as he can, safely and conveniently, to avoid the violence of the assault, before he turns upon his assailant. " The assault must be so fierce as not to allow him to yield a step without manifest danger of his life or great *bodily harm*, and then in his defence he may kill his assailant instantly." These facts must be made to appear on the trial, not simply that they appeared to be so, and the prisoner so believed. Some writers have included some of the cases above referred to in the class of justifiable homicide, In *justifiable* homicide, no blame whatever is to be imputed to the party killing. He may avow the act, and justify it. Most of the English cases have turned upon the question of murder or manslaughter. In those cases of killing in an encounter, when the defence of justifiable homicide has been interposed, I find no countenance of the notion that any thing short of imminent danger to life, or of great bodily harm, can be received as a justification or excuse.

In *Regina* v. *Smith,* (8 *Car. & P.* 160,) the prisoner was indicted for murder and also for manslaughter. He, the deceased, and other persons, had been drinking at an inn where the deceased struck the prisoner. Some time after, the prisoner and his brother went out, and the deceased soon after followed, and overtook the prisoner ; a fight ensued and he was killed by stabs inflicted with a bayonet, which belonged to the brother of the prisoner, who was a witness, and stated that the deceased overtook him, knocked him down, and took the bayonet and pursued the prisoner, and on overtaking him, a fight ensued, and a great struggle between them, when the deceased cried out, " I am stabbed, I am stabbed." The judge instructed the jury to inquire whether the prisoner was guilty of murder or of manslaughter, or whether his act was justifiable or

excusable.   He said, " Did the prisoner enter into the contest with an unarmed man intending to avail himself of a deadly weapon ?  for if he did it will amount to murder, but if he did not enter into the contest with the intention of using it, then the question will be, did he use it in the heat of passion in consequence of an attack made upon him ?   If he did, then it will be manslaughter.   But there is another question,   Did he use the weapon in defence of his life ?   Before a person can avail himself of that defence he must satisfy the jury that that defence was *necessary;*  that he did all he could to avoid it ; and that it was *necessary* to protect his own life, or to protect himself from *such serious bodily* harm as would give a reasonable apprehension that his own life was in imminent danger.   If he used the weapon having no other means of resistance, and no means of escape, in such case, if he retreated as far as he could, he will be justified."

This language is evidently well considered.   The prisoner was not allowed to justify himself under an apprehension of serious bodily harm, but he was only to be *justified* when his act was *necessary* to protect himself from *such* serious bodily harm *as would give* a reasonable apprehension that his life was in imminent danger.   The imminent danger of bodily harm must have been present, actually existing, and to a degree that would create reasonable apprehension of danger to life.

In *Regina* v. *Bull,* (9 *C. & P.* 22,) it was insisted that the homicide was *justifiable* in preventing a robbery on the highway.   Vaughan instructed the jury " that it was not justifiable homicide unless there was an intention on the part of the deceased and his companions to rob or murder the prisoner, or to do same dreadful bodily injury to him, and that it was not the law that a man would be justified in taking away the life of another merely because he feared that he might be assaulted, or indeed if he was actually assaulted."   His lordship told the jury that " the question for their consideration was whether the conduct of the party made it necessary for the prisoner to inflict that blow, which almost immediately terminated in the death of the deceased ; whether he inflicted the wound in self defence

to save his own life which was in danger, or to protect himself from some dreadful bodily injury."

In the *United States* v. *Wittberger*, (3 *Wash. C. C. R.* 521,) Justice Washington states the law of justifiable homicide thus: "A man may oppose force to force in defence of his person, his family or property, against one who manifestly endeavors by surprise or violence to commit a felony, as murder, robbery, or the like." He says, "The intent must be to commit a felony. The intent must be *apparent* which will be sufficient, though it should afterwards turn out that the real intention was less criminal, or was even innocent. This apparent intent is to be collected from the attending circumstances, such as the manner of the assault, the nature of the weapon used and the like." He is here speaking of the *apparent intent* of the assailant whose life shall have been taken ; and the rule laid down is like that in our own statute, viz: "when there shall be reasonable ground to apprehend a design," &c. I have already shown that it is not necessary to establish this *design* on the part of the person killed, but only that there was reasonable ground to apprehend the design. Judge Washington adds, "and lastly, to produce this justification, it must appear that the danger was imminent, and the species of resistance used necessary to avert it." "It must appear," &c. that is, it must appear on the trial, from the evidence, that the danger was imminent. This charge is in accordance with the law as established by our statute. It was taken from the common law. All these cases show clearly that there must have been imminent danger, either of death or some great bodily harm ; and this must be shown to the satisfaction of the jury. I am satisfied that the legislature considered the common law carefully, and that they adopted it, in the section relating to justifiable homicide, and that they have thereby provided that a homicide shall not be justifiable unless there was, first, reasonable ground to apprehend a design to commit a felony, or to do some great personal injury ; *and*, secondly, there was imminent danger of such apprehended design being accomplished ; that is, that there was imminent danger that a felony would in fact be committed, or

that some great personal injury would be inflicted, unless the party was arrested by death. If I am right in this construction of the statute, the charge of the learned justice was in strict accordance with the law.

If the prisoner acted under an honest belief that he was in imminent danger of some great personal injury or of death, and that it was necessary for him to take the life of the deceased to avoid the danger, this would repel all presumption of malice, and reduce the homicide to the degree of manslaughter, probably the lowest under the 19th section of the act; the punishment for which may be imprisonment in a state prison for two years, or in a county jail not exceeding a year, or by a fine or both. (*See Justice Cowen's opinion in People* v. *Rector*, 19 *Wend.* 590.)

Malice is always the test between murder and manslaughter; without malice, express or implied, there can be no murder, and with malice the homicide will be murder. It is therefore always important to inquire with what motive the prisoner acted. If he acted purely from fear, or from a belief that the act was necessary to save himself from death or great personal injury, then he will have acted without malice, and, though mistaken, will not be guilty of murder, but of manslaughter.

HOYT, J. concurred in the opinion of Justice MARVIN.

MULLETT, J. It appears by the bill of exceptions in this case that, after the judge who presided at the trial had concluded his charge to the jury, no part of which was excepted to on the part of the prisoner, the prisoner's counsel requested the judge to charge the jury, in substance, that if Brush struck the first blow, and the prisoner had no premeditated design to effect the death of Brush, and did not adopt that occasion to gratify feelings of malice or revenge, although he used more blows and more force than were really necessary to his defence, and used a dangerous weapon, and was mistaken in believing there was reasonable ground to apprehend a design to do him some great

personal injury, and that there was imminent danger of such design being accomplished; yet the prisoner was justified in killing Brush, if he *believed* himself to be in such danger; that the question was not whether there *was* danger, but whether the prisoner *believed* there was. That the judge refused so to charge the jury, but on the contrary charged them, that to render the killing justifiable they should be satisfied that there was *in fact*, imminent danger that Brush would commit some great personal injury to the prisoner.

As the trial of this cause appears to have involved the whole doctrine of homicide, and to have presented questions under the several classes into which homicide is divided, a brief recurrence to the qualities or characteristics which distinguish the several sorts of homicide from each other, may not be altogether useless in the examination of the subject before us. Homicide, or mankilling, may be divided into criminal, justifiable and excusable. The terms used to designate the last two classes sufficiently explain themselves. Criminal homicide is divided into murder and manslaughter. Murder is the unlawful killing of a human being with malice aforethought. Malice aforethought, in this definition, is not confined in its meaning, to long cherished malevolence, grudge or hate, as the term is sometimes used, but has a broader signification and includes depraved or malignant intention or design, formed under the influence of the reasoning faculties. Judgment, instead of impulse, no matter how recently formed.

Manslaughter is the unlawful killing of a human being without malice. The distinction between murder and manslaughter is not involved in the question whether the act which occasioned the death, was intentional or not, but in the question whether the death was the designed object of the act, or the uncontemplated result of an act, prompted by impetuous and blind passion. This distinction gives occasion for proof of provocation. Provocation is that which provokes or excites passion. The proof of provocation is applicable to the question whether the killing was the result of suddenly and strongly provoked or excited passion, or of reflection, reasoning

The People *v.* Shorter.

or design ; or in other words, whether the killing was murder or manslaughter. No person could ask to have his case put to the jury more fairly than was the prisoner's, so far as related to the question between murder and manslaughter. In presenting this feature of the case, all the proof of provocation, the commencement of the affray, the priority of the first blow, the character of the fight, and all the circumstances which could affect the question, were fairly and charitably applied. The judge told the jury, in substance, that if they should be satisfied, from the evidence in the case, that when the affray commenced the prisoner had no design to kill Brush, and that while they were in such affray, the prisoner killed Brush in the heat of passion, during the fight, without reflection or proper time for the blood to cool, passion to subside, or reason to interpose, the killing would not be murder, but would be either justifiable or excusable homicide, or manslaughter. This put the question whether, under all the circumstances of provocation, the killing was murder or manslaughter, fairly and directly to the jury, in the very language and spirit of the law. The request of the prisoner's counsel put his assumed defence on a justification. This is altogether different ground. A justification admits that the killing was designed, but claims that it was right. In a justification the prisoner says in substance, true I killed the deceased, and I admit that I designed to kill him, but I claim that I had a legal right to do so. All homicide is presumed to be unlawful, until the contrary be shown. The person, then, who assumes to justify the killing, takes the burden of proving the justification upon himself. This presents the question, what will justify one man in killing another? The general answer of the law of nature is that one man may kill another to save his own life. The answer of civilized society and our municipal law is, that a homicide is justifiable " when committed by a person when resisting an attempt to murder such person, or to commit a felony upon him, or upon, or in, any dwelling house in which such person shall be; or when committed in the lawful defence of such person, or of his or her husband, wife, parent, child, master, mistress or servant, when

there shall be reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and there shall be imminent danger of such design being accomplished." (2 R. S. 660.) The construction of this statute is supposed to be involved in the request of the prisoner's counsel, and the reply of the judge. The prisoner's counsel insists that the justification is based on the prisoner's *belief* of danger. His proposition is that the question is not whether there *was in fact* imminent danger of such design being accomplished, but whether the prisoner *believed* there was danger. Perhaps it is sufficient to say of the proposition that it cannot be sustained by any construction. The belief of the prisoner cannot be put in issue, or tried as a fact, and therefore the statute requires that he shall have reasonable grounds for his apprehension or belief. He must, at least, prove the facts to the jury, and they must judge whether he had reasonable grounds to apprehend the design and danger which would justify him in taking the life of the assailant, for his own safety. If the judge had simply denied the request of the prisoner's counsel, no question would have been presented worthy of consideration. But his honor went farther, and in reply to the request of the prisoner's counsel, charged the jury that to render the killing justifiable, they should be satisfied that there was, *in fact*, imminent danger that Brush would commit some great personal injury to the prisoner; thus putting the prisoner's assumed justification, not on the apparent danger which might reasonably have influenced his action at the time, but on what might be proved to have been the real character of those appearances of danger. It appears to me that this remark of the judge, as a legal proposition, was erroneous. That a person's right to defend himself must depend on the apparent necessity of such defence, and that the question to be presented to the jury, in such cases, is, whether the facts and circumstances, as they are proved to have existed at the time of the killing, gave the deceased reasonable grounds to apprehend the danger which would justify him in resorting to his ultimate means of security, by taking the life of his adversary. I cannot explain my views of this sub-

The People *v.* Shorter.

ject any better than by quoting the language of Chief Justice Parker of Massachusetts. After laying down several propositions explanatory of the crimes of murder and manslaughter, and of justifiable and excusable homicide, the chief justice states and illustrates another proposition in these words:— "When from the nature of the attack upon a person, there is reasonable ground to believe that there is a design to destroy his life, or commit a felony upon his person, the killing of the assailant will be excusable homicide, although it should afterwards appear that no felony was intended. Of these propositions the last is the only one which will be doubted any where, and this will not be doubted by any who are conversant in the principles of the criminal law. Indeed if this last proposition be not true, the preceding ones, however true and universally admitted, would in most cases be entirely inefficacious. And when it is considered that the jury who try the cause are to decide upon the grounds of apprehension, no danger can flow from the example. To illustrate this principle take the following case: A. in the peaceable pursuit of his affairs sees B. rushing rapidly towards him with an outstretched arm and a pistol in his hand, and using violent menaces against his life, as he advances. Having approached near enough, in the same attitude, A., who has a club in his hand, strikes B. over the head, before or at the instant the pistol is discharged, of which wound B. dies. It turns out that the pistol is loaded with powder only, and that the real design of B. was only to terrify A. Will any reasonable man say that A. is more criminal than he would have been if there had been a bullet in the pistol? Those who hold such doctrine must require that a man so attacked must, before he strikes the assailant, stop to ascertain how the pistol is loaded, a doctrine which would entirely take away the right of self defence. And when it is considered that the jury who try the cause, and not the party killing, is to judge of the reasonable grounds of apprehension, no danger can be supposed to flow from the principle." (*Russell on Crimes,* 1*st Amer. ed.* 699, *note.*) It appears to me that Chief Justice Parker's illustration of the proposition laid down by him is unanswerable.

That the right of self defence does not depend on any subsequent developement of the real character of those circumstances which at the time appeared to render it necessary. That a man is not obliged to wait until an apparent design against his life is demonstrated by giving him a dangerous and perhaps mortal wound, before he defends himself; nor to defend himself against an attack apparently aimed at his life at the peril of being found guilty of manslaughter, at least, if the circumstances and appearances which gave him reasonable grounds for such defence at the time, should afterwards turn out to be of a different character from what they appeared to be. On the trial of such a case, as I understand the law, the true question to be presented to the jury upon the proof of all the facts and circumstances, as they existed at the time of the killing, is, whether the accused had reasonable grounds to justify him in believing that it was necessary to take the life of the assailant, to save himself from some great personal injury. This is clearly the principle of the common law, and I also understand it to be in accordance with the true and designed construction of our revised statutes. (2 *R. S.* p. 660, § 3, *subdivision* 2.) It appears by extracts from the general reports and notes of the revisers appended to the 3d volume, 2d edition, that sections 3 and 4 of the statute above referred to, were enacted by the legislature the same as reported by the revisers. That in subdivision 2 of section 3, (being the clause now under consideration,) all after the word servant, as reported, was printed in italic, which would present the subdivision as follows: "When committed in the lawful defence of such person, or of his or her husband, wife, parent, child, master, mistress or servant; *when there shall be reasonable ground to apprehend a design to commit a felony or do some great personal injury, and there shall be imminent danger of such design being accomplished.*" In a note of the revisers applicable to this subdivision of the section they say: " qualified by the words in italic," according to the views of most of the writers on the subject, and the express decisions of Massachusetts and New Jersey, and they refer to the opinion of Chief Justice Par-

The People *v.* Shorter.

ker above quoted. There could not well be a more distinct recognition of the opinions advanced by another writer, than this note affords of the adoption of the principles laid down by Chief Justice Parker; and yet his proposition, and the whole scope of his illustration, are in direct contradiction of the doctrine now assumed on the part of the prosecution. The 3d and 4th sections of the revised statutes now under consideration, were taken substantially from the 4th, 5th and 6th sections of the old act concerning murder, 1 *R. L.* 67. (*See reviser's notes.*) By the 4th section of the old act, the killing of a person attempting to rob or murder any person in or near a highway, or feloniously attempting to break a dwelling house in the night time; and by the 5th section, the killing of any person in self defence; and by the 6th section, the killing of a person in the lawful defence of one's husband, wife, parent, child, master, mistress, or servant, were all, in effect, declared to be justifiable. By the 1st subdivision of section 3d of the present statute, the justification declared by the 4th and 5th sections of the old statute, is extended to homicide commited by a person when resisting any attempt to murder such person, or to commit *any felony* upon him or her, or on or in any dwelling house in which such person shall be; while the 6th section of the old act is in substance copied into the 2d subdivision of section 3 of the present statute, with no material alteration except the qualification reported in italic, as above mentioned. The English statutes, from which ours are taken, and consequently our statutes, are said to be in affirmance of the common law. (*Russell on Crimes,* 789, 1*st Am. ed.*) Thus the common law right of necessary self defence is declared and upheld by those statutes. It is true that the common law and the statute put the justification upon the proposition, that the person killed was attempting to commit the felony, which justified the killing, but it has never been held that the justification depended upon proof that the deceased was *in fact* engaged in committing the felony. The justification has been considered made out, if the circumstances were such as to give the accused reasonable grounds to believe that the deceased was engaged in committing the felony,

and that the necessity of taking life to prevent the felony existed. Russell says " a man may repel force by force in defence of his person, habitation or property, against one who *manifestly* intends and endeavors, by violence or surprise, to commit a known felony upon either, but the *intent* should be *apparent* and not be left in doubt, so that if A. make an attack upon B. it must plainly *appear* by the *circumstances* of the case, as the manner of the assault, the weapon, &c. that the life of B. is in imminent danger, otherwise his killing the assailant will not be justifiable self defence." (*Russ. on Cr.* 789, 1*st Am. ed.*) The writer above referred to, at page 791, continues his remarks on this subject by saying : " Important considerations will arise in cases of this kind, as to the grounds which the party killing had for *supposing* that the person slain had a felonious design against him, more especially when it afterwards appears that no such design existed." He then mentions Levit's case, reported in *Cro. Car.* 538, 1 *Hale*, 42, which was the killing in the dark, with a sword, of a female servant, on the supposition that she was a thief endeavoring to break into the house to steal from it, in which the killing was held excusable and the accused acquitted. This case is commented on by Foster, who disapproves the decision, on the ground that Levit did not use due circumspection ; (*Foster*, 299 ;) and by Hawkins, who approves it. (*Hawk. P. C. ch.* 28, § 27.) But it is not pretended by either of them that Levit's justification or excuse depended on the *fact* that the person killed was actually engaged in feloniously breaking the house. Russell, at page 792, proceeds : " Questions will also sometimes arise as to the apparency of the intent in one of the parties to commit such felony, as will justify the other in killing him." He then refers to several cases in which the appearances of a felonious intent were deemed sufficient to justify or excuse the killing, and concludes by saying, " But no assault, however violent, will justify killing the assailant under the plea of necessity, unless there be a plain *manifestation* of a felonious intent ; and cites 1 *East's P. C.* 277, *ch.* 5, § 47. This is the subject to which the qualification reported by the revisers in italic, and adopted by the legislature without altera-

tion, is applied. The appearances and manifestation of the design and danger, must be such as to give the accused, in the opinion of the jury, reasonable grounds to resort to his self defence. An examination of the laws involving the principle under consideration, will show that the distinction between this kind of justifiable homicide and manslaughter, is sometimes obscure and difficult to be traced, in practice—still it is fixed in law, and the two kinds of killing are no more blended in theory than guilt and innocence in any other transactions of human life. The intricacy of such questions in fact arises from the difficulty of ascertaining whether the killing was the result of apparent necessity or not; but the difficulty of the question is a poor excuse for confounding guilt and innocence, or for compromising a doubtful case, on some mitigated degree of guilt. I understand that the revisers and the legislature, by the qualification referred to, endeavored to fix a standard by which such questions should be decided, by *expressly* requiring, what the common law had always required, that the accused should convince the jury, as matter of fact, that he had *reasonable* grounds to apprehend the felonious design, and the imminent danger of its accomplishment. But his honor, the judge, in his reply to the request of the prisoner's counsel, appeared to suppose that the last clause of the qualifying section required that the prisoner should show that there was *in fact* imminent danger that the felonious design would be accomplished. It appears to be admitted that the accused is required to show only reasonable grounds to apprehend the design to do the injury. How can the danger of its accomplishment be any more certain, or more a matter of fact, than the design? If the deceased had really no design to commit the injury, there was certainly no danger of his accomplishing it; so that in such a case neither the design nor the danger could be proved in fact, and yet all the cases show that they may be so apparent as to justify the accused. I have no doubt that the whole clause of the statute is qualified by the words *reasonable grounds*, and that the person setting up such justification is bound to prove only reasonable grounds to apprehend the design, and the danger of its

accomplishment, and that the revisers and the legislature intended to adopt the common law rule as laid down by Russell and other writers, and illustrated and decided by Chief Justice Parker. This was certainly not the principle recognized by the judge who tried this cause, in his reply to the request of the prisoner's counsel; and on that ground I should be for a new trial, if I could perceive that the prisoner made a case to which the principle adverted to was in any aspect applicable. It must not be forgotten that the principle embraced in the proposition of the prisoner's counsel, was applicable only to a justification in self defence. That it had no relation whatever to the question whether the killing was murder or manslaughter, or if manslaughter, of what degree. And it must also be remembered, that, before the proposition of the prisoner's counsel was made, the prisoner had gone through his whole proof, without any restraint or control on the part of the court. His case had therefore assumed its own peculiar characteristics and form. Did the prisoner make a case which entitled him to the benefit of the principle suggested by his counsel? If he did not, and there was nothing in his case for the principle to be applied to, it was a matter of no importance to him how it was decided: it was not a decision upon *his case*. A justification of a homicide is not made out by showing that the accused was in danger; but it must include the fact that the killing was necessary to avoid the danger. The law will not justify homicide on any other ground than necessity. Without showing the necessity, the accused is not in the attitude of a justification : he is not, in the language of the statute, in the *lawful defence* of himself. If death happen in the course of a mutual combat, voluntarily continued, it will be at least manslaughter. In such a case a person, to justify the killing of his adversary, must show that he had declined farther combat, or endeavored to adopt some other means of security, short of taking his adversary's life, or that his situation or the fierceness of the fight, would not permit him safely to do so. In all cases of a justification of a homicide, on the ground of self defence, the necessity of the killing is one of the elements of the justification,

without which the design of the accused, and the danger of its accomplishment, are entirely inefficacious. (*Russ. on Crimes,* 780, 781, *and the revised statutes referred to. The State* v. *Wells,* 1 *N. J. Rep. by Coxe,* 424. *The Commonwealth* v. *Riley, Thacher's Cr. Ca.* 471. *The State* v. *Hill, Dev. & Batt.* 491.) I do not learn from the bill of exceptions in this case, that the prisoner made any proof or pretence of a necessity to take the life of the deceased, or that he endeavored to decline or avoid the fight. On the contrary, it appeared that the affray in which the death was perpetrated, was in one of the most populous streets in the city of Buffalo, with a man entirely unarmed and crippled by many wounds, while the prisoner was fighting to the death with a dirk knife. Without proof of an offer or attempt to decline or discontinue the combat, or an inability to do so, he did not make a case to which the principle contended for by his counsel was legally applicable. The proposition of the prisoner's counsel was altogether hypothetical, and foreign to the matter in hand. In such a case the counsel had no right to the judge's opinion, (19 *Wend.* 569,) and the remark of the justice in reply was a mere *obiter dictum.* On this ground I shall found my opinion for refusing a new trial.(*a*)

New trial denied.

(*a*) Affirmed by the court of appeals.

SAME TERM. *Hoyt, Mullett, Sill, and Marvin,* Justices.