Goodall *v.* State.

---

OLIVER P. GOODALL *v.* STATE OF OREGON.

*Error to Clackamas.*

1. Dying declarations having been admitted—*Held,* it was competent to show that the deceased was a disbeliever in a future state of rewards and punishments.

2. Evidence, sought for the purpose of laying a ground for impeaching a witness, must be relevant to the issue.

8. The court below having instructed the jury that, " to justify a killing in self-defence, it was necessary that an *assault* should have been committed by the

person killed; that it was not enough that the party killed had a pistol in his hand, but that there must have been a presentation of it, or some demonstration of shooting." And that "the having a drawn pistol in his hand, by deceased, would not be enough, although deceased had threatened to take the life of the prisoner, and those threats had been communicated to him."—*Held*, erroneous.

4. *Held*, that "if the jury believed from the evidence in the case, that there was reasonable ground for A. to believe his life in danger, or that he was in danger of great bodily harm from the deceased; and that such danger was imminent, and he did so believe, and acting on such belief, killed the deceased, he *was excusable;* and that it was not necessary that he should wait till an assault was actually committed."

5. The reasonableness of the appearances, under which a party claims to justify, may very properly be left to a jury, under the instructions of the court.

6. Under our statute, upon a charge of murder, the killing, having been admitted by the prisoner, does not devolve upon him the necessity of proving justification.

7. It is necessary for the prosecution, in all trials for murder, to go into the proof of the facts and circumstances of the killing, to establish *malice*, under our statute.

8. The only declarations of the deceased admissible are, either dying declarations, or those which are a part of the *res gestæ*.

GOODALL was indicted, and convicted in the Circuit Court, for the murder of one Potts ; and the case is brought into this court, and stands on errors assigned on bill of exceptions.

It appears from the evidence reported, that Potts (the deceased) went to the house of one Aldrich, where Goodall resided. Goodall was absent when Potts arrived. When Goodall came home, he first saw Potts at the door of the house, and at the door of Goodall's private room. Goodall was at a short distance from the house. Potts was shot with a pistol in two places, the balls striking near the door. He had a pistol which was not discharged, and as to whether it was drawn or not, the evidence is conflicting. One witness states that Potts drew his pistol before he left the house, immediately before he was shot. There was evidence tending to show that Potts had threatened violence to Goodall, and that Goodall was informed of these threats. The dying declarations of the deceased were admitted in evidence. And there was considerable other evidence, which is reported ; but

this statement is sufficient to show the pertinency of the matters passed on by this court.

*Williams & Kelly,* for Goodall.

*W. W. Page,* for State.

BOISE, J. The dying declaration of the deceased being admitted in evidence, the counsel for the prisoner offered to prove that the deceased was a disbeliever in a future state of rewards and punishments, for the purpose of discrediting his dying declarations. And I am of opinion that such evidence should have been admitted; for this belief, and the anticipation of future retribution, is the only sanction of such declarations. It is supposed that one impressed with the fear of immediately impending dissolution, and believing that he will soon be called to answer for the truth of his statements to his final judge, will be under restraint against falsehood sufficient to make the admission of such evidence safe, and generally contribute to the ends of justice. But when the deceased was a disbeliever, and, consequently, under no apprehension of future punishment for his falsehood, it is reasonable to believe that, however much he may be impressed with the fear of immediate and certain death, still he would not be under such strong influences to make a true statement of the facts as one impressed with the belief of future accountability. (1*st Greenleaf Ev.* sec. 157; 2 *Russel on Crimes,* 764, 766.)

The next ground of error is, that the court refused to allow N. Bell, a witness for the prosecution, to answer this question, to wit: "Did you state to Robbins and Hamilton, that if Goodall met Potts, he (Goodall) would be the worst-whipped man he ever saw?" This question was asked to lay a foundation to impeach the witness; and, as I think the evidence sought, by this question, was irrelevant to the issue, I am of opinion it was properly excluded.

The next question in this case arises on the several instruc-

tions of the judge, as to what would justify the taking of life in self-defence; and all there is on the subject, in the instructions, may be considered together. After instructing the jury in the language of the statute, the court said : "To justify a killing in self-defence, it was necessary that an *assault* should have been committed by the person killed; that it was not enough that the party killed had a pistol in his hand, but that there must have been a presentation of it, or some demonstration of shooting." The court also said, that "the having a drawn pistol in his hand, by deceased, would not be enough; although deceased had threatened to take the life of the prisoner, and these threats had been communicated to him."

I understand, by these instructions, that the court held the law to be, that an actual assault with the pistol was necessary to justify the killing, which means, that there must have been, on the part of the deceased, an attempt to shoot the prisoner; and until such attempt was made, the prisoner would not have been justified in acting on the defensive, and in shooting the deceased, although deceased appeared before him with a drawn pistol, and had threatened his life. If such be the law, then there is no such thing as available self-defence—when the assailant makes his attack with a pistol, or other kind of firearm; for, the assault and discharge of the weapon are simultaneous, or so nearly so, that resistance would be almost impossible. Suppose A., who has threatened the life of B., appears to B. suddenly, at the house of the latter, at an unusual place, armed with a gun, and in a threatening attitude, and B., induced by the previous threats and unusual appearance of his adversary, and believing his own life in imminent danger, and having himself a pistol, shoots A. and kills him, before A. actually makes an attempt to level his gun. Would this be murder? I think not. Such a case, unchanged by other evidence than the killing, would lack all indications of malicious intent, which is necessary to constitute murder.

If B., under such circumstances, acting from appearances,

and believing that he was in actual and imminent danger of death, or great bodily harm, should kill A., I think he would be justified.  By the common law, one acting from appearances in such a case, and believing the apparent danger imminent, would be justified, though it afterwards turned out that there was no real danger, and that the gun of the assailant was only loaded with powder.  This is, certainly, as strong a case for justification as when one, alarmed in the night by the cry of thieves, rushes forth in the dark, and, by mistake, kills an innocent person; and, in such a case, the slayer would be excused at common law.  Such was the dictum in the *Levett case*, which has been approved by the English commentators.  (1st *East P. C.* 274; 1 *Russel on Crimes*, 669.)

In the case before us there was evidence tending to show, that when the prisoner first saw deceased, at the time the fatal shots were discharged, deceased had a pistol in his hand, and was standing on the door-step of the prisoner's private room; which was an unusual place for one who had threatened the prisoner's life, and whom he considered his enemy. And I think the court should have instructed the jury, that, if they believed, from the evidence in the case, that there was reasonable ground for Goodall to believe his life in danger, or that he was in danger of great bodily harm from the deceased, and that such danger was imminent, and he did so believe, and acting on such belief killed the deceased, he was excusable; and that it was not necessary that he should wait until an assault was actually committed.

The whole doctrine of self-defence was most ably examined and illustrated in the case of Thomas O. Selfridge, tried in the Supreme Court of Massachusetts; and the doctrines of that case were adopted, in the State of New-York, in the case of *Shorter* v. *The State*, where it is declared by Bronson, judge, in speaking of the same case, "that when, from the nature of the attack, there is reasonable ground to believe that there is a design to destroy his life, or commit any felony upon his person, the killing the assailant will be excusable

homicide, although it should afterwards appear that no felony was intended." "To this doctrine," says the learned judge, "I fully subscribe; a different rule would lay too heavy a burden on poor humanity." He further says, that the authority of the Selfridge case was followed by the revisers, in framing the Statutes of New-York, touching this question. And our statute is a copy of the New-York statute, and if the doctrine is properly applicable there, then it is applicable here also.

As to what will constitute reasonable grounds of belief in such cases, sufficient to justify taking life, must depend, to a considerable extent, on the circumstances of each particular case. And the reasonableness of the appearances under which a party claims to justify, may very properly be left to a jury, under the instructions of the court. And, I think, it is going too far to lay down the general rule, that an actual assault must be committed; for such a rule would take away, or, at least, render almost unavailable, the right of self-defence, when fire-arms are used.

It is also assigned as error, that the court instructed the jury, "that killing being admitted by the accused, it devolved on him to prove that he was justifiable." I think this instruction in conformity with the common law; but it is not necessary to examine the common law authorities on this subject, for our statute, in the fourth section of the third chapter, provides, "there shall be some other evidence of malice than the mere proof of killing, to constitute murder in the first or second degree." This, I think, is conclusive on this subject; for it was the evident intention of the legislature, by this statute, to impose on the prosecution some further burden than the mere proof of the killing to establish the malice, which, under our statute, is not to be presumed from the mere proof of the killing, and I think the instruction of the court was error.

There is another ground of error assigned, which is, that the court erred in permitting the declarations of Potts to be given in evidence, made to his son prior to the killing, and

declaring the reason why he was going to the house of Aldrich, where he was killed. I think this evidence was improperly admitted; and that the only declarations of the deceased, which are competent, are dying declarations, or those which are a part of the *res gestæ.*

Judgment is reversed.