### OWENS v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 23, 1904.)

No. 978.

1. HOMICIDE—SELF-DEFENSE—INSTRUCTIONS.

Where, in a prosecution for homicide, defendant claimed that the killing was done in self-defense, an instruction that the jury should say from the evidence whether it was necessary for defendant to kill deceased to protect himself, in order that the killing should be justified, was erroneous, since defendant was entitled to defend himself against attack by deceased, to the extent of killing deceased, if it appeared to defendant at

---

¶ 1. See Homicide, vol. 26, Cent. Dig. §§ 159, 161, 165.

the time of the encounter, acting as a reasonable man, that it was neces-
sary for him to kill deceased to prevent injury to himself.

**2. SAME—REASONABLE DOUBT—DEFINITION.**

An instruction that a reasonable ground of doubt is one which is rea-
sonable from the evidence or want of evidence, and must be a ground of
doubt for which a reason can be given, based on the evidence or want of
evidence, was objectionable, since a doubt arising out of the evidence is
a mental operation for which it may be difficult or impossible to assign
a reason.

**3. SAME—EXCEPTIONS.**

Where, in a criminal case, the court gave a long, written charge to the
jury, and, immediately after sending the jury out, defendant's counsel
notified the judge that he wished to except to portions of the charge, and
asked the court if he had any rule as to the manner of taking exceptions
to instructions, and the judge responded that he had no such rule, and
directed counsel to adopt such practice as he might be advised was proper,
whereupon, on the succeeding day, which was Sunday, defendant's attor-
ney prepared a motion in arrest of judgment and for a new trial, with
written exceptions to the charge, which he handed to the judge and the
clerk on that day, with instructions to file the papers on the succeeding
day, which was accordingly done, and the judge considered such exceptions
and overruled the same, they would not be disregarded on appeal on the
ground that they were not filed in time to allow the trial judge to recon-
sider his charge and give different instructions.

Gilbert, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Third
Division of the District of Alaska.

Louis K. Pratt, for plaintiff in error.

Marshall B. Woodworth and Nathan V. Harlan, U. S. Attys.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, Dis-
trict Judge.

ROSS, Circuit Judge. The plaintiff in error was charged by in-
dictment with having killed one Carl Christensen, "purposely and of
his deliberate and premeditated malice," by cutting and stabbing him
with a knife, and, after trial, was convicted of murder in the second
degree, upon which conviction he was sentenced to imprisonment.
The homicide was the result of a combat with knives between the de-
ceased and the plaintiff in error, in a cabin occupied by the latter, at a
remote spot in the territory of Alaska. No one was present but the
participants. At the trial the plaintiff in error testified in his own be-
half to the effect that the deceased commenced the fight by attacking
and cutting him with a knife, and that, to protect his own life, he was
compelled to, and did, inflict the wounds resulting in the death of
Christensen. In considering the instructions given by the court below,
to which exceptions were taken by the plaintiff in error, it must, of
course, be assumed that the jury may have believed that testimony of
the defendant; and upon that point of self-defense, which was, indeed,
the only defense interposed, the court below instructed the jury as fol-
lows:

"The defendant in this case alleges that the killing of Carl Christensen, for
which he is now on trial, was done as an act of self-defense. The jury is
instructed that the dwelling house where a man lives is his home or castle,
and that he may repel force by force in the defense of his person against one

who manifestly intends and endeavors by violence to commit a felony upon him in such home or castle, and in such case he is not bound to retreat, but may pursue his adversary until he has secured himself from all danger; and, if he kills his adversary in so doing, it is justifiable defense.

"Applying the foregoing principles of law to this case, if you find from the evidence, or entertain a reasonable doubt whether or not it is true, that at the time mentioned in the indictment the deceased, Christensen, attacked the defendant in his cabin or dwelling place with a butcher knife, and the same being a dangerous weapon, with which death or great bodily harm could have been inflicted upon the defendant by Christensen, and that Christensen then and there endeavored to kill or do great bodily harm to the defendant with such knife, then defendant was not obliged to retreat, but had the lawful right to stand his ground and defend himself against such attack, and had the right to continue such defense and pursue Christensen until he (defendant) was entirely out of danger; and if, in making such defense, Christensen met his death, it was justifiable homicide, and you should find the defendant not guilty.

"The court instructs the jury that, when a person is attacked by another with a deadly weapon, he has the right to act upon the appearance of things as they appear to him at the time, and, as long as he honestly and in good faith believes that his antagonist is about to inflict death or great bodily harm upon him, he has the right to continue his defense.

"The law of self-defense, however, will not permit the one attacked to pursue the attacking opponent further than is necessary to protect himself, and, if you shall find and believe from the evidence in this case that Christensen did attack the defendant, this would not justify the defendant in killing him, without such killing was necessary to protect himself; and of the necessity thereof you are to judge, and not the defendant, and you are to judge from the evidence in the case.

"The law of self-defense does not imply the right to attack, except in self-defense, nor will it permit acts to be done in retaliation or for revenge; and therefore if you shall find and believe from the evidence in this case, beyond a reasonable doubt, that the defendant brought on and voluntarily entered into the difficulty with the deceased for the purpose of wreaking vengeance upon him, and if you shall find and believe from the evidence, beyond a reasonable doubt, that he killed the deceased when he had no reasonable apprehension of injury from him, or of any present impending injury to himself from deceased, or that it was done in a spirit of retaliation and revenge, then the defendant cannot avail himself of the law of self-defense, and you should not acquit him on that ground. And the court instructs you that in case you find that the defendant voluntarily brought on and voluntarily entered into the fight with the deceased, Carl Christensen, and was the assailant therein, it does not matter, under the law of self-defense, how great the danger or imminent the peril to which the defendant may have believed himself to be exposed during said difficulty, it would not justify or excuse the killing.

"You are instructed that the law of self-defense was as much the right of the deceased, Christensen, as it was that of the defendant; and if you shall find and believe from the evidence in this case, beyond a reasonable doubt, that the deceased was attacked by the defendant when the deceased was attempting to retreat to and through the open door of the house where the homicide happened, and would have so retreated but for the attack of the defendant, then I instruct you that the defendant is not entitled to be acquitted on the ground of self-defense.

"It is for you to determine, gentlemen of the jury, from the evidence in this case, and upon these instructions, whether or not the accused killed the deceased in self-defense, or whether he killed him without justification or excuse.

"Previous threats or acts of hostility of the deceased, Carl Christensen, toward the defendant, however violent they may have been, were not of themselves sufficient to justify the defendant in slaying the deceased, or to excuse or justify him. He must have acted under an honest belief that it was necessary at the time to take the life of the deceased in order to save his own. It must appear that there was a reasonable cause to excite this apprehension

on his part. So that, if you find that the deceased at the time he was killed did nothing to excite in the mind of the defendant the fear that the deceased was about to execute his threat, then the threats and bad character of the deceased, whatever you may find them to have been, are unavailing, and should not be considered by you. But if the evidence leaves you in doubt as to what the acts of the deceased were at the time, you may consider the threats and character of the deceased, in connection with all the other evidence, in determining who was probably the aggressor.

"You are instructed that no mere threats made by the deceased before or at the time of the killing, unaccompanied at the time of the killing with any attempt to carry them into execution, are sufficient to justify the killing, or reduce it to a lower degree of homicide than murder; and if you find that the defendant cut and stabbed and killed the deceased because of such threats, and because the defendant thought such threats would justify him in killing the deceased, and that when he cut and killed him he was in no immediate or imminent danger, he is guilty of murder.

"The law of self-defense will justify one in killing another in the protection of his own life, but it will not justify him in killing another where there is no reasonable danger to himself, nor will it justify or excuse him in using greater force than is reasonably necessary to protect himself; and if you shall find and believe from the evidence in this case that the accused was not acting in self-defense when he killed the deceased, Carl Christensen, and was acting as an unjustifiable assailant, and not in the defense of his own person, he would not be excused on the plea of self-defense."

Much that was there said by the trial court was correct. The difficulty is that in at least one place in these instructions the court ignored the well-settled doctrine that, where one is attacked by another with a deadly weapon, the party attacked may, if he does so honestly and in good faith, safely act in the light of his surroundings, and on the appearances to him at the time, for the court distinctly and specifically instructed the jury that of the necessity of the defendant's protecting himself "you are to judge, and not the defendant, and you are to judge from the evidence in the case"; that is to say, upon the evidence given at the trial the jury was to determine whether or not it was necessary for the defendant to kill the deceased in order to protect himself, without reference to the appearances to the defendant of existing conditions at the time of the encounter. The law upon the subject is well stated in the case of State v. Ferguson, 9 Nev. 106, 116, where the court said:

"In order to justify the homicide, it must appear to the defendant's comprehension as a reasonable man that he was actually in danger of his life, or of receiving great bodily harm, and that to avoid such danger it was absolutely necessary for him to take the life of the deceased. 'The inquiry,' as was said by Cole, J., in State v. Collins, 32 Iowa, 39, 'is not whether the harm apprehended was actually intended by assailant, but was it actual and real to the accused, as a reasonable man, as compared with danger remote or contingent?'

"By the frequent use of the words 'absolutely necessary,' as found in the instructions and charge, the jurors may have drawn the inference that, before they would be justified in acquitting the defendant, it must appear to them that the killing of deceased was absolutely necessary. This view of the case would virtually deprive a defendant of a reasonable exercise of his own judgment in determining from all the circumstances what was necessary to be done for the protection of his person or his life—a right which the law confers upon every individual, but one that must always be exercised at his peril, subject to revision by a jury of his peers. Bishop states the rule as follows: 'Whenever a man exercises his right of self-defense, he must be understood to act on facts as they appear to him. And if, without fault or carelessness, he is misled concerning them, and defends himself correctly according to what

he supposes the facts to be, he is justifiable, though they are in truth otherwise, and he has really no occasion for the extreme measure.' 1 Bishop on Crim. Law, § 384. This principle was announced by Judge Parker, afterwards chief justice of Massachusetts, in Selfridge's Case; indorsed by the Supreme Court of New York in People v. Shorter, 4 Barb. 477; affirmed in the Court of Appeals (Shorter v. People, 2 N. Y. 197, 51 Am. Dec. 286); and is sustained by the weight of reason and a decided preponderance of the authorities (Oliver v. State, 17 Ala. 587, 599; State v. Harris, 46 N. C. 193; State v. Sloan, 47 Mo. 604; Meridith v. Commonwealth, 18 B. Mon. 49; Logue v. Commonwealth, 38 Pa. 267, 80 Am. Dec. 481; Campbell v. People, 16 Ill. 19, 61 Am. Dec. 49; Pond v. People, 8 Mich. 150).

"This being the law, it follows that if Ferguson was without fault, and had reasonable ground to believe, and did believe, that he was in danger of his life, or of receiving great bodily harm, from Ash, and that this could only be prevented by his using such means of defense as were within his power, and he acted under such belief, and not in a spirit of revenge, then the killing of Ash was justifiable. Whether there was an absolute necessity for a resort to such means was a question for him to decide at the time; and although he may have erred in his judgment as to the existence of such necessity, still, if, from all the attending facts and circumstances, he in good faith believed, and had reasonable grounds for believing, that he only safety was in using the means then in his power to prevent Ash from killing him, or inflicting great bodily harm, the use of such means was justifiable. Whether, from the testimony, such state of facts existed, was a question for the jury to determine."

As, for this reason, the judgment must be reversed and the case remanded for a new trial, it is not necessary to decide any other question presented on the appeal, although we think it proper to suggest that one of the two definitions of a reasonable doubt given by the court below to the jury should be omitted upon the new trial, namely:

"A reasonable ground of doubt is one which is reasonable from the evidence or want of evidence. It must be a ground of doubt for which a reason can be given, which reason must be based upon the evidence or want of evidence."

A doubt arising out of evidence is a mental operation for which it may often be very difficult, and, indeed, impossible, to assign any reason, and yet, if honestly entertained by the jury in a criminal case, must be acted upon, for they are only authorized to bring in a verdict of guilty when satisfied and convinced beyond a reasonable doubt of the guilt of the accused. Such a doubt has been often and correctly defined as a doubt which is reasonable in view of all of the evidence, and such as arises upon an impartial comparison and consideration of all of it, and prevents the jury from being able candidly and truthfully to say that they have an abiding conviction of the defendant's guilt.

No point is made by counsel for the government either as to the sufficiency of the exceptions to the instructions, or as to the time when they were made; but objection is made by one of the members of the court to a consideration of such exceptions on the ground that they were not filed until two days after the rendition of the verdict.

The record shows that the instructions of the court to the jury were in the form of a written charge, covering 18 pages of the printed transcript. We do not at all question the general rule that, in the absence of a statutory provision or a valid rule of the court to the contrary, exceptions must be taken and entered prior to the return of a verdict, in order to entitle them to consideration by an appellate court.

The Criminal Code of Alaska prescribes the order of proceedings for

the trial of a criminal case, and by the seventh subdivision of section. 137 of that Code it is provided that:

"The court, after the argument is concluded, shall immediately, and before proceeding with other business, charge the jury; which charge, or any charge given after the conclusion of the argument, shall be reduced to writing by the court, if either party request it before the argument of the trial is commenced; such charge or charges, or 'any other charge or instructions provided' for in this section, when so written and given, shall in no case be orally qualified, modified, or in any manner explained to the jury by the court; and all: written charges and instructions shall be taken by the jury in their retirement, and returned with their verdict into court, and shall remain on file with pa-- pers of the case."

Sections 164, 165, and 166 of the same Code relate to exceptions in such cases, declaring what an exception is, how it shall be stated, taken,. settled, and allowed, and in what instances no exception need be taken. They are as follows:

"Sec. 164. Definition of Exception. That an exception is an objection taken at the trial to a decision upon matter of law, whether such trial be by jury or court, and whether the decision be made during the formation of a jury, or in the admission or rejection of evidence, or in the charge to the jury, or at any other time from the calling of the action for trial to the rendering of the verdict or decision.

"Sec. 165. Exceptions, How Taken. That the point of the exception shall be particularly stated, and may be delivered in writing to the judge or entered in his minutes, and, at the time or afterwards, be corrected until made conformable to the truth.

"Sec. 166. When Exceptions not Taken or Allowed. That the statement of the exception, when settled and allowed, shall be signed by the judge and filed with the clerk, and thereafter it shall be deemed and taken to be a part of the record of the cause. No exception need be taken or allowed to any decision upon a matter of law when the same is entered in the journal or made wholly upon matters in writing and on file in the court."

The bill of exceptions in the case in hand recites:

"The trial commenced on August 13, 1902, and terminated on Saturday, August 16, 1902. After the attorneys for the respective parties had closed their arguments to the jury, the court instructed the jury in writing; and, as the members of the jury were filing out of the courthouse, the attorney for defendant stepped forward to the judge of the court, and said to him that he wished to except to portions of the charge, but that it was impossible for him to intelligently do so until he could take the instructions and examine them, and thereupon inquired of said judge whether he had any rule of court as to the manner of taking exceptions to instructions—that is, whether such exceptions should be taken orally or in writing—to which the judge responded that he had no rule on the subject, and for counsel to adopt such practice as he might be advised was proper. The next day (August 17th) was Sunday, and defendants' attorney prepared a motion in arrest of judgment, a motion for a new trial, and written exceptions to the charge to the jury, and on that day handed to the judge a copy of the exceptions, and to the clerk of the court originals of the exceptions to the charge and the motions in arrest and for a new trial, with instructions to the clerk to file the three papers on Monday, the 18th of August, which was done accordingly."

The record further shows that the trial court entertained the exceptions in question, reciting, in its order overruling the motions made therein for a new trial and in arrest of judgment, that it had "duly considered the exceptions to the charge of the court to the jury in this action, which exceptions were filed with the clerk on the 18th day of

August, 1902, and a copy thereof handed to the judge of this court on the 17th day of August, 1902." The trial judge therefore remained satisfied with his charge, notwithstanding the exceptions, and, of course, would not have changed it, had they been actually filed at the time the charge was delivered. The attorney for the defendant in this case did not withhold his exceptions for the purpose of entrapping the court. On the contrary, he made known to the judge at once that he desired to except to portions of his charge, which, as has been said, was a very lengthy one, stating that it was impossible for him to do so intelligently until he could have an opportunity of examining the instructions given, and inquiring whether there was any rule of the court in respect to the manner of taking such exceptions. If the court, instead of responding, as it did, that there was "no rule on the subject, and for counsel to adopt such practice as he might be advised was proper," had said that it was necessary for him to take such exceptions as he desired then and there, it cannot, we think, be doubted that counsel would have done so. Relying, as he did, on the response of the court, and handing to the court, as he did the next day, his exceptions in writing, which the latter entertained and considered on the motions for a new trial and in arrest of judgment, we do not think that they ought here to be disregarded on the ground that they were not filed in time to allow the trial judge to reconsider his charge and "give new and different instructions." In the somewhat similar case of Ah Lep v. Gong Choy, 13 Or. 211, 9 Pac. 483, the Supreme Court of Oregon applied the maxim that "an act of the court shall prejudice no man."

The judgment is reversed and the cause remanded to the court below for a new trial.

GILBERT, Circuit Judge (dissenting). Although a portion of the charge to the jury, when taken by itself, is erroneous, it is doubtful whether the error is such as to justify a reversal of the judgment, when the instruction is considered in connection with other portions of the charge, in which the court twice properly instructed the jury upon the law applicable to the proposition involved in the objectionable paragraph. But I think that we are precluded from considering the alleged error, for the reason that no exception was taken to the charge at the time of the trial. The bill of exceptions shows that after the court had instructed the jury, and as the latter were retiring from the courtroom, the attorney for the defendant stepped forward to the judge and said to him that he wished to except to the charge, but that it was impossible for him intelligently to do so until he could take the instructions and examine them, and that he thereupon inquired of the judge whether he had any rule of court as to the manner of taking exceptions to instructions—that is, "whether such exceptions should be taken orally or in writing"—to which the judge responded that he had no rule on the subject, and directed him to adopt such practice as he might be advised was proper. The jury, on the day on which they went out, returned a verdict against the plaintiff in error, but no exceptions were filed or presented to the court until two days later, when written exceptions were filed, together with a motion for a new trial. There was nothing

in the remark of the judge to the counsel to mislead the latter as to the practice of the court. The object of the inquiry was not to ascertain at what time the exceptions should be taken, but whether they should be oral or written. The answer of the judge was, in substance, that counsel might take either course, or such course as he deemed proper. The Code of Alaska (section 164, c. 17) defines an exception as follows:

"An exception is an objection taken at the trial to a decision upon matter of law, whether such trial be by jury or court, and whether the decision be made during the formation of the jury or in the admission or rejection of evidence, or in the charge to the jury, or at any other time from the calling of the action for trial to the rendering of the verdict or decision."

This statute plainly provides that the exception can only be taken at the trial, and before the verdict is returned. It is adopted from the laws of Oregon of October 11, 1862 (B. & C. Comp. Or. § 169). It has been construed by the Supreme Court of Oregon in Scott v. Cook, 1 Or. 24, O'Kelly v. Territory, 1 Or. 51, State v. Foot You, 24 Or. 62, 32 Pac. 1031, 33 Pac. 537, and other cases, in which it has been held that it is the invariable rule in Oregon that no exception to the rulings or proceedings of the trial court in either civil or criminal cases will be considered on appeal, unless there was an objection, a ruling thereon, and an exception at the trial, all properly incorporated into a bill of exceptions. The case of Ah Lep v. Gong Choy, 13 Or. 211, 9 Pac. 483, referred to in the opinion of the majority of the court herein, goes no farther than to sustain the rule, of which there can be no question, that one who has regularly taken exception at the trial, and duly tendered a statement thereof to the judge, is entitled to have it settled and allowed. It affirms, rather than denies, the doctrine that the exceptions, in order to be of avail in an appellate court, must be taken while the jury are at the bar. And this is undoubtedly the universal rule, applicable alike to civil and criminal cases. In Thiede v. Utah Territory, 159 U. S. 521, 16 Sup. Ct. 62, 40 L. Ed. 237, the court said that one object of an exception is to call the attention of the circuit judge to the precise point as to which he is supposed to have erred, that he might then and there consider it, and give new and different instructions to the jury, if, in his judgment, it should be proper to do so. In Phelps v. Mayer, 15 How. 161, 14 L. Ed. 643, the court said that an exception taken to instructions on the day following the rendering of the verdict was not properly before an appellate court. In Barton v. Forsyth, 20 How. 533, 15 L. Ed. 1012, the court said:

"It has been repeatedly ruled by this court, as will appear by the cases reported, that no instruction to the jury, given or refused by the court below, can be brought here for revision by writ of error, unless the record shows that the exception to it was taken or reserved while the jury were at the bar."

In United States v. Carey, 110 U. S. 51, 3 Sup. Ct. 424, 28 L. Ed. 67, Mr. Chief Justice Waite said:

"The rule is well established and of long standing that an exception, to be of any avail, must be taken at the trial."

In Stewart v. Wyoming Ranch Co., 128 U. S. 390, 9 Sup. Ct. 104, 32 L. Ed. 439, the court, referring to an objection taken to an instruc-

tion given to the jury in the absence of counsel, and after the jury had retired to consider of their verdict, said:

"It is a conclusive answer to this objection that no exception was taken to this instruction at the time it was given, or before the verdict was returned. The fact that neither of the counsel was then present affords no excuse."

In Michigan Insurance Bank v. Eldred, 143 U. S. 298, 12 Sup. Ct. 452, 36 L. Ed. 162, the court again affirmed the rule, by saying:

"By the uniform course of decision, no exceptions to rulings at a trial can be considered by this court unless they were taken at the trial."

This court, in Stone v. United States, 64 Fed. 677, 12 C. C. A. 451, declined to review an assignment of error based upon an instruction to the jury, "wherein the record fails to show affirmatively that timely exceptions were taken thereto while the jury was at the bar."

It is no answer to the doctrine of these authorities to say that the ruling of the trial court in denying the motion for a new trial demonstrated that the misleading instruction would not have been corrected if attention had been directed to it by an exception. It might well be that a judge would, before verdict, correct an imperfect instruction, and yet might thereafter deny a new trial, for the reason that he was not convinced that the jury could have been misled by it. But this is all aside from the true inquiry here, which is whether an appellate court has the power to entertain an exception not taken in apt time. I submit that the trial court was powerless, even if it had attempted to do so, to extend the time. But it did not attempt to do so, nor is there any warrant for saying that counsel for plaintiff in error relied on the words of the judge in postponing the filing of his exceptions. It was proper for that court, on the motion for a new trial, to consider the exceptions, irrespective of the time when they were taken, but such is not the rule in an appellate court.