[No. 2277]

## STATE OF NEVADA, RESPONDENT, *v.* CHARLES · COMISFORD, APPELLANT.

[168 Pac. 287]

1. HOMICIDE—JUSTIFIABLE HOMICIDE—SELF-DEFENSE.

Self-defense is the right to exercise judgment as a reasonable man in determining, at the time, whether, from all the attendant circumstances, it was necessary to kill for the protection of one's own life, and it was error to instruct, "Necessity is not for the defendant, but for the jury" to decide.

2. CRIMINAL LAW—REMARKS OF PROSECUTING ATTORNEY—REVERSIBLE ERROR.

Remarks of prosecuting attorney. in argument alluding to rumors being prevalent that the jury, because of personal association and friendships, would not have the courage to send accused to the penitentiary were reversible error.

APPEAL from the Fifth Judicial District Court, Nye County; *Mark R. Averill,* Judge.

Charles Comisford was convicted of murder in the second degree, and he appeals. **Reversed.**

*Thos. M. Fagan* and *Wm. Forman,* for Appellant:

The court erred in its instruction as to self-defense in that the jury was instructed that the question of necessity was not for the defendant, but for the jury, thus precluding the jury from considering the effect on the mind of the defendant of the surrounding circumstances. The rule is universal that to warrant the taking of life in self-defense there must have been reasonable grounds for belief upon the part of the slayer that he was in imminent danger of loss of life or of suffering serious bodily harm at the hands of the person killed; and the belief need be no more than reasonable. (13 R. C. L. 817.) If the slayer act in good faith and with reasonable discretion, he will be excused, even though he err. (*In Re Nagle,* 39 Fed. 833; *State* v. *Waterman,* 1 Nev. 543; *State* v. *McClure,* 5 Nev. 132; *State* v. *Skinner,* 32 Nev. 70.)

Killing an assailant may be excusable, though it turn out afterward that there was no actual danger, if it be done under a reasonable apprehension of loss of life or great bodily harm, and danger appears so imminent at

the moment of assault as to present no alternative of escaping its consequence but by resistance. (*Logues* v. *Commonwealth*, 80 Am. Dec. 481; *Meuley* v. *State*, 8 Am. St. Rep. 477.)

The court erred in refusing to reprimand the district attorney for certain remarks in the course of his argument to the jury, in which he insinuated that some of them did not have the courage to bring in a verdict of guilty because of personal associations, sentiments, and friendships. (*Bissette* v. *State*, 101 Ind. 85; ·*Weatherford* v. *State*, 37 Am. St. Rep. 828; 2 R. C. L. 416.) A prosecuting attorney is bound by more rigorous rules than an ordinary attorney; and, while it is not improper for him to warn the jury to perform their duty, it is highly prejudicial for him to demand that they bring in a verdict of a certain kind under penalty of his scorn and contempt if they do otherwise. (2 R. C. L. 426; *State* v. *Blackman*, 32 South. 334; *People* v. *Fielding*, 70 Am. St. Rep. 495; *State* v. *Petty*, 32 Nev. 334; *State* v. *Rodriguez*, 31 Nev. 342; *Grosee* v. *State*, 11 Tex. Cr. App. 377.)

*Geo. B. Thatcher*, Attorney-General; *E. T. Patrick*, Deputy Attorney-General, and *Wm. McKnight*, Deputy Attorney-General, for Respondent:

It is well established that one who is the aggressor and provokes the difficulty in which he kills his assailant cannot invoke the right of self-defense to justify or excuse the homicide. There is certainly evidence in the case to show that appellant provoked the difficulty which led to the tragedy. A careful review of the testimony will show clearly that appellant, without any sufficient provocation whatsoever, inflicted a mortal wound upon the host whose hospitality he had been enjoying for several hours. He claims that the killing was done in self-defense, but the jury did not believe him. The killing being admitted, and no sufficient provocation appearing therefor, and the jury having disbelieved the self-defense theory, the conviction of appellant should be affirmed. (*Burton* v. *State*, 141 Ala. 32; *Dabney* v. *State*,

113 Ala. 38; *Blair* v. *State,* 69 Ark. 558; *People* v. *Conkling,* 111 Cal. 616; *People* v. *Piper,* 112 Mich. 164; *People* v. *McLeod,* 1 Hill, 377; *Lewis* v. *Commonwealth,* 79 Va. 732.)

It is possible that immaterial errors have crept into the case; but in view of all the facts and circumstances disclosed by the evidence, this court must reach the conclusion that appellant had a fair and impartial trial, and we are compelled to invoke sections 7302 and 7469, Revised Laws, provided for such cases. (*State* v. *Smith,* 33 Nev. 459; *Brown* v. *Dunn,* 35 Nev. 177; *State* v. *Mircovich,* 35 Nev. 489; *State* v. *Scott,* 37 Nev. 450; *Ex Parte Booth,* 154 Pac. 939.)

By the Court, McCARRAN, C. J.:

This is an appeal from a judgment of conviction of murder in the second degree. To the indictment, which charged murder in the first degree, the defendant pleaded "not guilty" and interposed the defense of justifiable homicide based upon self-defense.

The question as to who was the aggressor in the affray, as well as the question of the necessity to strike the fatal blow, was a closely contested issue in the trial. The court instructed the jury on the law of justifiable homicide as follows:

"You are instructed that the right to take life in self-defense rests upon necessity, and no one is justified in taking the life of another unless the necessity for so doing is apparent as the only means of preventing his destruction, or of escaping grievous bodily harm. The question of the existence of such necessity is not for the defendant, but for the jury; the jury must draw from all the circumstances whether, from the situation of the parties at the time, the defendant had reasonable ground to believe that it was necessary to take the life of the deceased as the only means of saving his own life, or of avoiding grievous injury to his person. If you do not so find, then you must bring in a verdict of guilty."

**1.** The expression in this instruction, "The question of the existence of such necessity is not for the defendant,

but for the jury," is clearly erroneous and fails to measure up to the law applicable to self-defense as laid down by leading decisions and text-writers upon the subject. The expression swept from the defendant the benefits of the law, which confers upon him the right to exercise his judgment as a reasonable man in determining, at the time, whether, from all the attendant circumstances and conditions, it was necessary to strike the fatal blow for the protection of his own life.

Where, in an affray, one strikes the blow that takes the life of another, necessity for the act to insure self-preservation is the gage and measure. The exercise of reasonable judgment as to the necessity is for him who strikes. Did the defendant, in striking the blow, exercise that judgment as a reasonable man would under such circumstances? That is the question for the jury. This court, in no uncertain terms, established the rule in the case of *State* v. *Scott,* 37 Nev. 412, 142 Pac. 1053, where, referring to the language of the Supreme Court of Iowa (*State* v. *Collins,* 32 Iowa, 39), as quoted and approved by Mr. Justice Hawley in the case of *State* v. *Ferguson,* 9 Nev. 114, and referring to the case of *Hawkins* v. *United States,* 3 Okl. Cr. R. 651, 108 Pac. 561, we said:

"The inquiry for the jury is: Did the defendant, acting as a reasonable man, upon the appearances of the existing conditions at the time of the encounter, believe at that time that it was necessary for him to commit that act in order to protect himself? An instruction upon the rule of self-defense, which failed to set forth the above qualification, is clearly erroneous."

The rule of law asserted by this court in that case found approval and sanction in the case of *Owens* v. *United States,* 130 Fed. 279, 64 C. C. A. 525. Moreover, it has received the approval of ruling cases on the subject in the several jurisdictions. (13 R. C. L. 817, 818.)

The instructions given by the trial court in the case at bar struck from the defendant the right to establish that in the fatal affray, and before he struck the blow that took the life of the deceased, he exercised such judgment as would have been exercised by a reasonable man

under such circumstances. The rule is eminently established that reasonable ground for belief of imminent danger upon the part of the slayer is the test that justifies the taking of human life where self-defense is interposed. (*People* v. *Lewis*, 117 Cal. 186, 48 Pac. 1088, 59 Am. St. Rep. 167; *State* v. *Shippey*, 10 Minn. 223, 88 Am. Dec. 70; *State* v. *Beckner*, 194 Mo. 281, 91 S. W. 892, 3 L. R. A. n. s. 535; *Goodall* v. *State*, 1 Or. 333, 80 Am. Dec. 396; *Tillery* v. *State*, 24 Tex. App. 251, 5 S. W. 842, 5 Am. St. Rep. 882.)

The belief in the slayer that the danger was apparently imminent is not to be viewed from the standpoint of the jury, but from the facts established. (194 Mo. 281, 91 S. W. 892, 3 L. R. A. n. s. 543.) The doctrine that would declare the jury to be the sole judges as to the existence of danger to the defendant at the moment of the affray would place the defendant in the unreasonable position of knowing, at the moment of the catastrophe, what the jury knows after there has been presented to them all of the facts and attendant conditions. Such a doctrine is not sanctioned by modern authority. (*Wesley* v. *State*, 37 Miss. 327, 75 Am. Dec. 62; *State* v. *Shippey, supra; Patten* v. *People*, 18 Mich. 314, 100 Am. Dec. 173.) See extensive note, 3 L. R. A. n. s. 537; 74 Am. St. Rep. 720.

The question of the existence of such necessity as called for the act by which the life of the deceased was taken was, at the time of the affray, a matter demanding that high degree of judgment which would be exercised by a reasonable being under like circumstances of the party by whose hand the blow was struck. It was his right to exercise this judgment—"a right which the law confers upon every individual, but one that must always be exercised at his peril, subject to revision by a jury of his peers." The giving of this instruction by the court was error, and such as affected, in no uncertain measure, the substantial rights of the appellant, by reason of which the judgment and order appealed from must be reversed.

**2.** Error is assigned to the remarks of the prosecuting attorney in the closing argument wherein he alluded to rumors being prevalent that:

"Members of the jury, because of personal associations, and sentiments and friendships, * * * would not have the courage to send this man to the penitentiary."

We have had occasion before to comment on remarks and conduct of prosecuting attorneys. We deem it proper to say here, as we said in the case of *State* v. *Scott*, 37 Nev. 432, 142 Pac. 1060:

"The office of district attorney is one of great power and responsibility. It may often happen that he is called upon to protect the rights of an accused person from the possibility of a conviction based upon public sentiment rather than the actual facts of the case. When a prosecuting officer seeks to take advantage of public sentiment to gain an unjust conviction, or seeks to take an unfair advantage in the introduction of evidence, or in any other respect, he is failing in his duty as the state's representative."

There was no foundation or excuse for the remarks of the prosecuting attorney in the case at bar so far as the record discloses. His utterance was misconduct such as should have called for immediate reprimand from the trial court. Overabundant zeal, spiced with that ever-impelling element, personal ambition for success, is too often the shrine of excessive devotion, where wild tongues are loosed "that have not Thee in awe."

In view of the fact that this case must be reversed for other errors, and inasmuch as the conduct complained of will not again be indulged in, we will pass the incident for this time by merely saying that if this error was the only one presented in the record we would be required to reverse the case. (*Weatherford* v. *State*, 31 Tex. Cr. R. 530, 21 S. W. 251, 37 Am. St. Rep. 828.)

The case is reversed and remanded.

It is so ordered.

COLEMAN, J., concurring:

I concur in the order of reversal. However, I am of the opinion that the instruction complained of, when read in connection with instruction No. 4, in no way

prejudiced the defendant. There is no doubt but that the rule of law enunciated by the chief justice is correct. All that the court meant to say by the sentence complained of was that the jury did not have to accept the statement of the defendant as to the necessity of taking the life of the deceased, but that they were the final judges as to whether or not the defendant had reasonable grounds to believe, at the time of the homicide, that such necessity existed. This, I think, is shown by the fact that the phrase complained of was separated from the rest of the sentence by a semicolon, and that the rest of the sentence implied that the defendant had the right, at the time of the homicide, to determine for himself whether or not it was necessary to take the life of the deceased, a right which was clearly and fully set forth in instruction No. 4.

SANDERS, J., having taken part in the trial of the case in the lower court, did not participate here.