## UNITED STATES v. WOODS et al.
### No. 448.

Circuit Court of Appeals, Second Circuit.
July 10, 1933.

Stanley M. Burns, of Dover, N. H. (George T. Hughes and Hughes & Burns, all of Dover, N. H., and Wilfred A. Laflamme, of Manchester, N. H., on the brief), for appellant.

John M. Stark and Ora W. Craig, both of Concord, N. H., for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

## MORTON, Circuit Judge.

These were two actions at law by different plaintiffs against the same defendants to recover damages for personal injuries and death caused by a collision of automobiles which took place on the highway between Concord and Dover, N. H. In the District Court there were verdicts and judgments for the plaintiffs. Only the defendant Higgins has appealed; as to the other defendant, Hobbs, the record has been amended to show a formal severance.

There was evidence upon which the jury might have found the following facts: The collision occurred at an intersection of roads. Higgins was driving one of the cars, and was going east. Hobbs was driving the other car; he was going north. The road on which Higgins was traveling, though not legally established as a "through road," was so marked and was guarded by "stop" signs on the cross-road on which Hobbs was proceeding. As the two cars approached the intersection, they were visible to each other for some distance. On the opposite side of the intersection from Hobbs, the view of the crossroad from the road along which Higgins was approaching was "obstructed" within the meaning of the law.

Higgins testified that he seasonably observed Hobbs' car, but, relying on the "stop" sign at the intersection—of which he was aware—and assuming that Hobbs would observe it, kept on at about twenty miles per hour. There was evidence, however—though rather slight—to the effect that Higgins did not see Hobbs until the cars were close together, and that his speed was considerably higher, though not what could be thought reckless.

Hobbs testified that he failed to notice either the Higgins car or the "stop" sign. It seems clear that he neither stopped nor appreciably slowed at the intersection, and came out into the "through road" as the Higgins car was coming into the intersection. In the collision which followed, the Hobbs car struck the rear end of the Higgins car, and the latter was overturned. Mrs. Jones, a passenger in it, was thrown out and so injured that she died shortly afterward; the first suit is by her administrator. The other passenger in the Higgins car, Mrs. Crate, was also injured; she is the plaintiff in the second suit.

The first question is whether there was any evidence warranting a finding that negligence on the part of Higgins entered into the accident. He contends that there was not, and that the jury should have been instructed to return verdicts in his favor. His contention is that the accident was plainly due to the gross negligence of Hobbs, and to nothing else, and that this was so clear that it ought to have been ruled as a matter of law.

The presiding judge instructed the jury that "it was the duty of Hobbs, on approaching the stop sign, to bring his car to a full stop and to observe the conditions of traffic in both directions before entering the intersection of the highway." "As to the defendant Higgins," he said, "there is no question * * * but that, because of the stop sign at the point of the intersection with the Suncook-Pittsfield road, Higgins had the right of way." These instructions were as favorable to Higgins as he could rightly expect. With regard to speed, the presiding judge called the jury's attention to the statute requiring reasonable and proper speed; to the statute requiring drivers of automobiles to slow down and give timely signals with the horn on approaching any intersecting way; to the statute making speed in excess of fifteen miles per hour prima facie unreasonable when approaching and traversing an intersection of highways where the driver's view is obstructed and defining what shall be deemed "obstruction." The statutory law and the common law bearing on the situation were clearly and carefully explained to the jury in connection with the evidence before them.

oration in the testimony of Teale, himself an accomplice to be sure, but his testimony was clear-cut and was unshaken. And as to Mrs. Woods there can be little doubt that she was trying to dispose of the back plate when she was arrested. Yet the conviction of Libero Santaniello and of Gesoaldo must stand upon the testimony of Mills alone, aided only by the evidence of officers who saw them frequently visit the Woods house but did not know what they did there.

■ With the conspiracy thus established, little need be said of the conviction under the second count charging possession of the plate. It was found in the possession of Mrs. Woods, and her possession was that of all. The suggestion that Bruno was only an employee not to be charged with possession in accord with De Gregorio v. United States (C. C. A.) 7 F.(2d) 295, is without substance, for he was clearly a conspirator.

■■ It is said that it was error to permit Mills to testify that Mrs. Woods told him she would have Libero Santaniello get the $150 which Libero gave Mills the next morning, but that was admissible under the well-known principle that what one conspirator says about the scheme while it is being carried out may be shown against all. Martin v. United States (C. C. A.) 17 F.(2d) 973; Silkworth v. United States (C. C. A.) 10 F. (2d) 711.

■■ The charge of the court is attacked, but we find that the court charged carefully and correctly as to conspiracy, pointed out that Mills and Teale claimed to be accomplices, and cautioned the jury concerning their testimony. This is certainly a good practice, though not absolutely essential. Rachmil v. United States (C. C. A.) 288 F. 782. Some requests to charge not made within the time limited by the rule of the Eastern district were refused. This was clearly within the discretion of the court. Kreiner v. United States (C. C. A.) 11 F.(2d) 722; Fabian v. United States (C. C. A.) 15 F.(2d) 696.

■ The court charged that a reasonable doubt was one for which a reason could be assigned. While we do not approve such a definition, it has in this circuit been held not to be erroneous. Perhaps the discussion which has taken place regarding this point and the divergent view courts have taken [see Pettine v. Territory of New Mexico (C. C. A.) 201 F. 489; Ayer v. Territory of New Mexico (C. C. A.) 201 F. 497; Owens v. United States (C. C. A.) 130 F. 279, where it has been held erroneous: and Griggs v. United States (C. C. A.) 158 F. 572, where the contrary conclusion was reached] has been helpful. We need not further consider the matter.

Affirmed.